IN THE UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT

NO. **23-11700-C**

United States of America,

Appellant,

- versus -

Stevenson Charles,

Appellee.

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

BRIEF FOR THE UNITED STATES

Markenzy Lapointe
United States Attorney
Attorney for Appellee
99 N.E. 4th Street
Miami, Florida 33132-2111
305-961-9155

Daniel Matzkin
Chief, Appellate Division

Jason Wu
Deputy Chief, Appellate Division

Shahrzad Daneshvar
Assistant United States Attorney
Of Counsel

**United States v. Stevenson Charles, Case No. 23-11700-C**

**Certificate of Interested Persons**

In compliance with Fed. R. App. P. 26.1 and 11th Circuit Rules 26.1 and 28-1, the undersigned certifies that the list set forth below is a complete list of the persons and entities who have an interest in the outcome of this case.

A.A.

A.G.

Bank of America Corp (BAC)

Becerra, Hon. Jacqueline

Caruso, Michael

Charles, Stevenson

Damian, Hon. Melissa

Daneshvar, Shahrzad

Dunham, Christian Scott

D.M.

Ecarius, Daniel L.

Federal Deposit Insurance Corporation (FDIC)

Gonzalez, Juan Antonio

Huck, Hon. Paul C.

**United States v. Stevenson Charles, Case No. 23-11700-C**

**Certificate of Interested Persons (continued)**

K.J.

Lapointe, Markenzy

Matzkin, Daniel

Miranda, Annika Marie

O.N.

Reid, Hon. Lisette M.

Silverio, Dayron

Silverstein, Joan

Smukler, Elena

United States of America

Wells Fargo & Co (WFC)

Wu, Jason

s/ *Shahrzad Daneshvar*
Shahrzad Daneshvar
Assistant United States Attorney

## Statement Regarding Oral Argument

The government respectfully requests oral argument in this case. While the government views the resolution of this appeal as straightforward, it recognizes that this Court denied the government's motion for summary vacatur of Charles's sentence. ADE34-2. The government welcomes the opportunity to address any questions from the Court at argument.

In essence, this appeal asks whether a district court errs when it imposes a sentence package that consists of an illegally long supervised release term and then grants a downward variance in the defendant's prison term based expressly on the defendant's acceptance of that illegal supervision term. Since that package is not authorized by statute, the government maintains that the Court should vacate it in its entirety and remand for a de novo resentencing.

There do not appear to be published decisions addressing exactly this circumstance—perhaps because it is so rare and unusual for a district court to impose a sentence that it itself acknowledges to exceed the statutory maximum. So while the answer is clear, the precise question may be new, and oral argument is appropriate.

## Table of Contents

**Page:**

Certificate of Interested Persons ........................................................... c-1

Statement Regarding Oral Argument ......................................................... i

Table of Contents .................................................................................. ii

Table of Citations .................................................................................iv

Statement of Jurisdiction ......................................................................ix

Introduction ..........................................................................................1

Statement of the Issue ...........................................................................2

Statement of the Case:

      1.    Course of Proceedings and Disposition in the Court Below........2

      2.    Statement of the Facts ...........................................................3

      A.    Charles Commits A Spree Of Violent Hate Crimes...................3

      B.    At The Sentencing Hearing, The District Court And Charles Strike An Illegal Bargain Concerning His Sentence .............................8

      3.    Standard of Review ............................................................12

Summary of the Argument ....................................................................12

**Table of Contents**

**(continued)**

**Page:**

Argument and Citations of Authority:

    This District Court Erred By Imposing An Illegal Sentence

    That Exceeds The Statutory Maximum Over The Government's

    Objection ..................................................................... 13

        A.    Charles's Sentence Package Is Illegal And, Despite

             His Purported Waiver Below, He Could Not Stipulate

             To A Supervised Release Sentence Above The Statutory

             Maximum. ................................................................. 13

        B.    The Only Appropriate Remedy In This Case Is Vacatur Of

             Both Charles's Imprisonment And Supervised Release

             Sentences And A De Novo Resentencing ....................... 19

Conclusion ............................................................................ 26

Certificate of Compliance ....................................................... 27

Certificate of Service ............................................................. 27

iii

## Table of Citations

**Cases:** **Page:**

*King v. United States*,

    41 F.4th 1363 (11th Cir. 2022) ................................................................. 14

*King v. United States*,

    641 F.2d 253 (5th Cir. 1981) ...................................................................... 16

*McCoy v. United States*,

    266 F.3d 1245 (11th Cir. 2001) ................................................................. 15

*Pepper v. United States*,

    562 U.S. 476 (2011) ...................................................................... 19, 20, 24

*United States v. Bushert*,

    997 F.2d 1343 (11th Cir. 1993) .............................................................14, 16

*United States v. Carpenter*,

    803 F.3d 1224 (11th Cir. 2015) ................................................................. 18

*United States v. Cobb*s,

    967 F.2d 1555 (11th Cir. 1992) ................................................................. 12

*United States v. DiFalco*,

    837 F.3d 1207 (11th Cir. 2016) ................................................................. 16

iv

**Table of Citations**

**(Continued)**

<u>**Cases**</u>:                                                                                                    <u>**Page**</u>:

*United States v. DiFrancesco*,

   449 U.S. 117 (1980) ..................................................................... 14

*United States v. Fowler*,

   749 F.3d 1010 (11th Cir. 2014) ..........................................................20, 24

*United States v. Kappes*,

   782 F.3d 828 (7th Cir. 2015) .................................................................... 21

*United States v. Love*,

   449 F.3d 1154 (11th Cir. 2006) ................................................................. 17

*United States v. Mobley*,

   833 F.3d 797 (7th Cir. 2016) .............................................................19, 20

*United States v. One 1978 Bell Jet Ranger Helicopter*,

   707 F.2d 461 (11th Cir. 1983) ................................................................. 16

*United States v. Prouty*,

   303 F.3d 1249 (11th Cir. 2002) ............................................................... 12

*United States v. Stinson*,

   97 F.3d 466 (11th Cir. 1996) ................................................................... 19

**Table of Citations**

**(Continued)**

<u>**Cases**</u>**:**                                                                                          <u>**Page**</u>**:**

*United States v. Wylie,*

   991 F.3d 861 (7th Cir. 2021) ...................................................................... 22

**Statutes & Other Authorities:**                                          **Page:**

18 U.S.C. § 924 .................................................................. 1, 2, 3, 8, 14

18 U.S.C. § 1201 ..................................................................... 2, 14

18 U.S.C. § 2113 ..................................................................... 3, 14

18 U.S.C. § 2119 ..................................................................... 2, 13

18 U.S.C. § 3231 ...................................................................... ix, 15

18 U.S.C. § 3553 ............................................................................. 20

18 U.S.C. § 3583 ...................................................................... 8, 13

18 U.S.C. § 3624 ...................................................................... 8, 13

18 U.S.C. § 3742 .............................................................................. ix

28 U.S.C. § 1291 .............................................................................. ix

Fed. R. App. P. 4 ............................................................................. ix

Fed. R. App. P. 26.1 ...................................................................... c-1

Fed. R. App. P. 32 ............................................................................ 27

## Statement of Jurisdiction

This is an appeal from a final judgment of the United States District Court for the Southern District of Florida in a criminal case. The district court entered judgment against Stevenson Charles on April 25, 2023. DE53; DE66. The district court had jurisdiction to enter the judgment under 18 U.S.C. § 3231. The government filed a timely notice of appeal on May 22, 2023. DE56; *see* Fed. R. App. P. 4(b). This Court has jurisdiction over this appeal under 28 U.S.C. § 1291 and authority to examine the government's challenge to Charles's sentence under 18 U.S.C. § 3742(b).

**Introduction**

In 2022, while still on probation for various carjacking and robbery offenses, Stevenson Charles committed a horrific spree of robberies, carjackings, kidnappings, and 18 U.S.C. § 924(c) offenses, including one in which he targeted a gay victim, kidnapped him, and shot him in the head three times. Although the victim survived, he suffers permanent damage from the attack. PSI ¶¶ 18-23; DE55:4-7. In the district judge's words, "this is probably as violent or as vicious a series of criminal acts I've had before me in my 20-something years on the bench." DE55:18. Still, the district court imposed an illegal sentence over the government's objection. Although Charles faced a Guidelines range of life imprisonment and a statutory maximum 5-year supervised release term, the court gave him a break on prison time—sentencing him to 45 years—in exchange for Charles accepting an above-maximum 15-year term of supervision. DE66:4 n.1; DE55:31-32. In short, Charles traded an illegally long supervision term for a downward variance, accepting a package of punishments that he preferred to a longer prison term and a 5-year stint on supervised release. But the district court was not authorized to illegally sentence Charles to an above-maximum sentence because the statutory maximum is a limit that Congress has placed on a court's authority and is not a right a defendant can waive. Therefore,

this Court should vacate Charles's illegal sentence package—both his prison term and his supervised release term, which are tied together by the district court's express description at the sentencing hearing and in the judgment. Because it includes an above-maximum supervised release term, Charles's sentence package is clearly illegal as a matter of law.

## Statement of the Issue

Whether the district court reversibly erred when, over the government's objection, it imposed an illegal sentence package that consisted of (a) a supervised release term 10 years above the 5-year statutory maximum, coupled with (b) a downward variance on Charles's prison term—which the court expressly premised on Charles's willingness to accept the illegally long supervision term.

## Statement of the Case

### 1.    Course of Proceedings and Disposition in the Court Below

A Southern District of Florida federal grand jury returned a 17-count indictment charging Stevenson Charles with carjacking, in violation of 18 U.S.C. § 2119 (Counts 1, 6, and 9); brandishing a firearm in furtherance of a crime of violence, in violation of 18 U.S.C. § 924(c)(1)(A)(ii) (Counts 2, 7, 15, and 17); kidnapping, in violation of 18 U.S.C. § 1201(a)(1) (Counts 3, 8, 11, 12,

2

and 13); bank robbery, in violation of 18 U.S.C. § 2113(a) and (d) (Counts 4, 5, 14, and 16); and discharging a firearm in furtherance of a crime of violence, in violation of 18 U.S.C. § 924(c)(1)(A)(iii) (Count 10). DE4.

Charles pleaded guilty to all counts without a plea agreement or factual proffer. DE43. The district court sentenced him to 45 years' imprisonment, to be followed by 15 years of supervised release. DE66:3-4.

**2.** **Statement of the Facts**

**A.** **Charles Commits A Spree Of Violent Hate Crimes**

In October 2022, Charles embarked on a violent crime spree using the "Grindr" application—an online dating and social networking application primarily used by members of the lesbian, gay, bisexual, transgender, and queer community—to contact gay men and arrange dates. PSI ¶¶ 4, 8, 18. When they met up, he would kidnap or carjack them at gunpoint, threaten their lives, and then force them to drive to a bank and withdraw money for him. *See, e.g.*, PSI ¶¶ 4-5, 11-12, 22. But he didn't stop there. Charles was apparently motivated by "hat[red]" of "gay people" and the "belie[f]" that "they should be punished." PSI ¶ 19. Charles assaulted his victims and made it clear through his slurs and threats that he targeted these men because of their sexuality. *E.g.*, PSI ¶¶ 10, 19, 23.

3

<u>Victim D.M.</u>

In October 2022, victim D.M. met Charles online using the "Grindr" application. PSI ¶ 4. D.M. drove his car to Charles's residence where he noticed that Charles was wearing an ankle monitor. PSI ¶ 4. D.M. and Charles engaged in sexual activity. PSI ¶ 4. A short time later, Charles produced a black firearm, pointed it at D.M., and demanded his cellular telephone, which D.M. provided. PSI ¶ 4. D.M., in fear for his life, and in an attempt to leave the house, told Charles that he would drive him to a bank and withdraw money for him. PSI ¶ 4.

D.M. drove Charles to a Wells Fargo bank and withdrew $380, which he handed to Charles. PSI ¶ 5. D.M. then drove to a Bank of America and withdrew $760, which he also handed to Charles. PSI ¶ 5. Charles pointed a firearm at D.M. as he was driving. PSI ¶ 5. Charles then ordered D.M. to exit his vehicle at a highway exit and Charles fled in D.M.'s vehicle. PSI ¶ 5. D.M.'s car was later recovered, abandoned in front of a residence. PSI ¶ 5.

<u>Victim A.A.</u>

In November 2022, victim A.A. received a message from Charles on the Grindr application. PSI ¶ 8. A.A. drove to a residence where Charles entered the backseat of A.A.'s vehicle and pointed a firearm at him. PSI ¶ 9. Charles

4

struck the victim several times with the firearm causing bruising to A.A.'s face and shoulder, and a cut to his head. PSI ¶ 10. Charles then ordered A.A. to unlock his telephone. PSI ¶ 10. While looking through pictures on A.A.'s telephone, Charles observed photographs of A.A. with other men. PSI ¶ 10. Charles called A.A. a "f---t" and said that he was going to "kill all of you/kill everyone like you" and struck A.A. with the firearm repeatedly. PSI ¶ 10.

Charles looked through A.A.'s wallet and stole $800 in cash. PSI ¶ 11. He then instructed A.A. to use his Apple credit card at an Automated Teller Machine (ATM) or he would kill him. PSI ¶ 11. A.A. told Charles that he had no personal identification number for the Apple credit card, and Charles responded by striking A.A. in the head, shoulders, and hands. PSI ¶ 11. Charles also took a metal tablet holder in A.A.'s vehicle and began hitting A.A. over the head with it, causing A.A. to bleed. PSI ¶ 13. Charles pointed the gun at A.A.'s head and told him that he planned to kill him and that his life was unnecessary. PSI ¶ 13. He then put the mirror down so that A.A. could see that he was bleeding. PSI ¶ 13. Charles told A.A. not to cry. PSI ¶ 13. He gave A.A. a towel, told him to clean himself, and pushed his head down. PSI ¶ 13.

Charles then drove A.A.'s vehicle to three different Walgreens stores where he used A.A.'s Apple credit card to purchase a $500 Apple gift card, a

$500 American Express Gold gift card, and other items. PSI ¶¶ 14-15. While Charles was inside the third Walgreens store, A.A. jumped into the driver's seat of his car and fled in his car, which Charles had inadvertently left on. PSI ¶ 15.

Victims K.J., A.G., and O.N.

In November 2022, Charles invited victim K.J. to his apartment, and they went to a bedroom. PSI ¶¶ 18-19. Charles began to initiate sexual contact, then he suddenly stopped, took out a firearm, and pointed it at K.J. PSI ¶ 19. Charles told K.J. that his whole life he had been made fun of for being gay, and he said that he had changed his lifestyle. PSI ¶ 19. According to K.J., Charles stated that he hated gay people and believed they should be punished. PSI ¶ 19. Charles told K.J. that he lures his victims using the Grindr application. PSI ¶ 19. He also told K.J. that he had committed four carjackings over the last four nights. PSI ¶ 19. He said that three of the people had complied and he let them go. PSI ¶ 19. Charles told K.J. that the fourth person had to be shot and killed. PSI ¶ 19. Charles told K.J. to get in the car and drive to the place where K.J. was staying. PSI ¶ 19. In fear for his life, K.J. complied. PSI ¶ 19.

They proceeded to the residence of victims O.N. and A.G., where K.J. was staying, and once inside Charles took out a second firearm and pointed it at victim O.N. PSI ¶ 20. Charles told O.N. not to cause a scene or he would shoot

him. PSI ¶ 20. Charles told O.N. that he had killed someone the night before and that he was running away "from 30 years." PSI ¶ 20. Charles pointed a gun at A.G. and told her to shut up or he would kill her. PSI ¶ 20. Charles asked A.G. to give him her firearm, and A.G. complied. PSI ¶ 20. Charles demanded money from the victims and brandished a firearm throughout the interaction. PSI ¶ 20. Charles instructed A.G. to empty her purse and she handed him around $400. PSI ¶ 20. Charles told the victims that they were all going to get in K.J.'s vehicle and go to the ATM. PSI ¶ 20.

O.N. directed K.J., who was driving, to the closest Wells Fargo bank. PSI ¶ 22. Charles instructed O.N. to withdraw money from the walk-up ATM, so he withdrew $1,000 in cash, his daily limit, and gave the money to Charles. PSI ¶ 22. K.J. then drove them to a Chase bank where A.G. withdrew her daily limit, $800, returned to the car, and gave Charles the cash. PSI ¶ 22. Charles then instructed victim K.J. to drive back to their residence. PSI ¶ 22. Once inside, Charles asked for any other valuables and took their telephones. PSI ¶ 22. Charles then instructed K.J. to drive him back to his residence. PSI ¶ 22.

During the car ride, Charles told K.J. that he didn't think he should let him live and that he should kill him because he was not crying. PSI ¶ 23. Charles instructed K.J. to park two houses down from his house. PSI ¶ 23. Charles then

7

started to get out of the car. PSI ¶ 23. When he got out of the car, K.J. turned the car back on, hoping to drive away and escape. PSI ¶ 23. Charles got back in the car and directed K.J. to drive a few blocks away with him. PSI ¶ 23. When K.J. parked, Charles shot K.J. multiple times, including in the back, shoulder, and head. PSI ¶ 23. Charles then fled. PSI ¶ 23. K.J. turned around and saw that Charles had left his telephone behind. PSI ¶ 23. K.J. called 911 and was rushed to Memorial Hospital with life-threatening injuries, which he ultimately survived. PSI ¶ 23. Reports revealed that K.J. was in the hospital for over a month. PSI ¶ 23.

**B.    At The Sentencing Hearing, The District Court And Charles Strike An Illegal Bargain Concerning His Sentence**

Charles's advisory Guidelines range was life imprisonment for the non-§ 924(c) counts, followed by at least 38 years on the § 924(c) counts. PSI ¶¶ 122-23; DE55:3, 30. And his maximum supervised release term was 5 years.[1] PSI ¶ 125 (citing 18 U.S.C. § 3583(b)(1)). Charles did not object to these calculations,

---

[1] The Probation Office noted that Charles faced a statutory maximum term of supervised release of three years on some counts and five years on others, and that under 18 U.S.C. § 3624(e), multiple terms of supervised release shall run concurrently. PSI ¶ 125.

8

though he did move for a downward variance based on his age (21 years old). DE50.

At sentencing, several of Charles's victims gave harrowing testimony about the terror and physical agony he afflicted on them. DE55:4-14. His victims have long-lasting, perhaps permanent, physical and psychological trauma from their encounters with Charles. For example, K.J. testified that he suffers permanent damage from the attack, including "loss of hearing in [his] right ear," "permanent damage to the right side of [his] nose," and the loss of his left tear duct and his ability to smell and taste. DE55:7-8. Another victim testified that Charles "didn't just take physical belongings, he took a part of my conscience and my heart." DE55:14.

Charles declined to allocute. DE55:14-15. But through counsel he argued that his young age and difficult upbringing justified a variance. DE55:19-20. While Charles sought the lowest possible 38-year prison sentence, the government recommended life. DE55:17, 22. The government explained that Charles is a violent recidivist who was on probation for robbery, armed robbery, and carjacking offenses at the time of these incidents and was enrolled in the state's boot camp program and had an ankle monitoring device tracking his movements. DE55:15-17; *see also* PSI ¶¶ 76-78. During those crimes, which he

committed as an 18-year-old, he choked and punched two victims and attacked another one with a gun. PSI ¶¶ 76-78. The government explained that a life sentence was necessary given failed attempts of rehabilitation and his continuous violent conduct. DE55:15-17.

The court was torn. On the one hand, it feared that Charles would always endanger the public because these were some of the "most vicious, violent" offenses the judge had seen in over 20 years on the bench. DE55:18-20. The court was "very disturb[ed]" that Charles showed "[z]ero" remorse even after listening to the victims explain how he "affected their lives so dramatically." DE55:18. The court explained that Charles's "hate . . . scares me," and that "I don't have any confidence that he's going to change anything." DE55:18-22. On the other hand, it asked Charles's counsel repeatedly to offer a concrete reason to believe that Charles could be reformed. DE55:18-28. As the district court put it, "I hate the idea of someone that young with that kind of background going off to prison for the rest of his life. I hate it. But . . . I'm just afraid for the victims down the road." DE55:26.

After debating the matter with the parties, the court suggested a compromise: that Charles accept more than the maximum term of supervision in exchange for a lower prison term. DE55:28. The court acknowledged that

"the statute says it's a maximum of five" years of supervised release. DE55:29. But the court questioned whether a defendant could "waive the maximum." DE55:29.

Without citing any authority, Charles insisted he could waive the maximum, and he jumped on the court's suggestion, offering to serve 15 years under supervision. DE55:28-30. The government objected and pointed out that the term of supervised release was illegal because Charles could not waive the statutory maximum. DE55:28-33, 38. The government also explained that it objected to Charles's supervised release term because of how it affected the term of imprisonment, and it expressed concern over how the district court's illegal sentence would affect a "later find[ing]" by the Eleventh Circuit "that a five-year maximum is all that [Charles] can serve." DE55:38-39.

Despite expressing uncertainty over whether Charles could waive his statutory maximum supervised release, the court expressly stated, "based on . . . the defendant's stipulation to this 15 years [of supervision], I have reduced his sentence down from life to 45 years." DE55:36. The district court reiterated its rationale in the written judgment: "The Court acknowledges that fifteen (15) years of supervised release exceeds the statutory limit; however, the defendant

11

stipulated to this increased term of supervised release in lieu of additional time in prison." DE66:4 n.1.

**3.    Standard of Review**

This Court reviews the legality of a criminal sentence de novo. *United States v. Prouty*, 303 F.3d 1249, 1251 (11th Cir. 2002). Illegal sentences include those that exceed the statutory maximum for a given offense. *United States v. Cobb*s, 967 F.2d 1555, 1558 (11th Cir. 1992).

## Summary of the Argument

This straightforward appeal is about whether a district court can impose an illegal sentence package, the lynchpin of which is a supervised release term that exceeds the statutory maximum. Under bedrock legal principles, the answer is no. That Charles stipulated to his illegal sentence does not absolve the district court of its error. Because the statutory maximum is a limit Congress placed on the court's authority, Charles could not stipulate to giving the court authority that Congress never granted. Thus, the district court erred in sentencing Charles to an illegally high term of supervised release over the government's objection.

The appropriate remedy here is to vacate the entire sentence package: both Charles's prison and supervised release sentences. The district court varied downward from life to 45 years' imprisonment in exchange for Charles

12

accepting an above-maximum supervised release sentence. Because the district court explicitly stated that it tethered its downward variance to Charles's acceptance of the above-maximum supervised-release term, this Court should vacate both Charles's prison and supervised release terms so that the district court can formulate a new sentencing package to fit this case's gruesome facts.

## Argument

### This District Court Erred By Imposing An Illegal Sentence That Exceeds The Statutory Maximum Over The Government's Objection.

There is no dispute that the district judge imposed a supervised release term above the 5-year statutory maximum over the government's objection. Indeed, even he recognized it and questioned whether Charles could waive the statutory maximum supervised release term. DE55:28-33; DE66:4 n.1.

### A.    Charles's Sentence Package Is Illegal And, Despite His Purported Waiver Below, He Could Not Stipulate To A Supervised Release Sentence Above The Statutory Maximum.

Under 18 U.S.C. § 3583, Class A and B felonies carry a 5-year maximum supervision term, and Class C felonies carry a 3-year maximum term, unless the specific criminal statute provides for more time. Supervised release terms must run concurrently, so they cannot be stacked to create longer terms. *See* 18 U.S.C. § 3624(e). Charles pleaded guilty to violating 18 U.S.C. § 2119(1) and (2)

13

(carjacking), 18 U.S.C. § 924(c), 18 U.S.C. § 1201(a)(1) (kidnapping), and 18 U.S.C. § 2113(a) and (d) (bank robbery plus assault). Those statutes' maximum prison terms range between 15 years and life, making them a mix of Class A, B, and C felonies. None of them contain a specific supervised release provision, so the maximum total supervision term was 5 years. *See* PSI ¶ 125.

The district court violated these statutes by sentencing Charles to a 15-year supervision term. The district court's apparent theory, supported by Charles, was that a defendant can waive a statutory maximum. But that notion contradicts bedrock legal principles. A "defendant may not receive a greater sentence than the legislature has authorized." *United States v. DiFrancesco*, 449 U.S. 117, 139 (1980). "It is both axiomatic and jurisdictional that a court of the United States may not impose a penalty for a crime beyond that which is authorized by statute." *United States v. Bushert*, 997 F.2d 1343, 1350 n.18 (11th Cir. 1993). In short, this sentence is illegal.

To be sure, defendants can waive personal rights that belong to them such as the right to counsel, U.S. Const. amend. VI; the right against self-incrimination, *Id.* amend. V; and the right to appeal a conviction and sentence, *King v. United States*, 41 F.4th 1363, 1367 (11th Cir. 2022). But the government is unaware of any case in which a defendant has waived an illegal sentence that

14

exceeds the statutory maximum, and such a waiver should not be possible. That is so because certain legal rules cannot be waived, as they do not confer a right on defendants but limit how the court can act. The statutory maximum is a limit that Congress has placed on a court's authority. The parties—let alone the defendant by himself—cannot stipulate to giving the court authority that Congress never granted.

For example, parties may not waive a jurisdictional defect. *McCoy v. United States*, 266 F.3d 1245, 1249 (11th Cir. 2001). Congress confers subject-matter jurisdiction on the courts by statute. As relevant here, 18 U.S.C. § 3231 confers jurisdiction over all charged "offenses against the laws of the United States," which is "exclusive of the courts of the States." Based on the plain text of § 3231, a defendant could never waive the right to be tried in federal court and seek to have federal charges tried in a state court (or vice versa, concede to federal jurisdiction to try a state charge by purporting to "waive" § 3231). "Because the federal courts are courts of limited jurisdiction, deriving their power from Article III of the Constitution and from the legislative acts of Congress, the parties cannot confer upon the courts a jurisdictional foundation

15

that they otherwise lack." *United States v. DiFalco*, 837 F.3d 1207, 1215 (11th Cir. 2016).

The same holds true of foundational rules like the burden of proof. To convict a defendant of a crime, the government must prove his guilt beyond a reasonable doubt. Even if a defendant, for some reason, agreed to submit his case to the jury under a lower burden of proof, and the government agreed, a court could not accept such a purported waiver. *See United States v. One 1978 Bell Jet Ranger Helicopter*, 707 F.2d 461, 462 (11th Cir. 1983) ("[A] stipulation of the parties to an action may be ignored by the court if it is a stipulation as to what the law requires."); *King v. United States*, 641 F.2d 253, 258 (5th Cir. 1981) (affirming a trial court's refusal to enforce the parties' stipulation, which incorrectly shifted the burden of proof on an issue, because "[a] court is not bound by the parties' stipulations of law").

Like subject matter jurisdiction or the proper burden of proof, a statutory maximum sentence is not waivable because it does not belong to a defendant. Rather, it is a constraint on the court imposed by Congress to protect the judicial system and prevent it from operating beyond its statutory boundaries. *See Bushert*, 997 F.2d at 1350 n.18 ("[T]here are certain fundamental and immutable legal landmarks within which the district court must operate regardless of the

16

existence of sentence appeal waivers," including statutory maximums and prohibitions on basing a sentence on a constitutionally impermissible factor such as race.). Thus, the district court erred by accepting Charles's purported waiver and sentencing him to an illegally high term of supervised release.

In the earlier motions briefing, Charles argued that two cases show that a defendant can stipulate to an illegal sentence. Neither case stands for Charles's unprecedented proposition.

In *United States v. Love*, 449 F.3d 1154 (11th Cir. 2006), the defendant pleaded guilty to knowingly and willfully violating an ex parte temporary restraining order in an unfair trade practices action. *Id.* at 1155. The defendant's counsel repeatedly requested the district court impose a sentence of time served followed by supervised release, so the district court sentenced the defendant to 45 days' incarceration followed by five years of supervised release. *Id.* at 1555-56. On appeal, the defendant argued that the statute of conviction did not authorize any term of supervised release or, in the alternative, allowed at most one year of supervision. *Id.* at 1156. This Court did "*not* reach the merits" of the defendant's claims because it concluded that the defendant had invited the error by repeatedly requesting supervised release in lieu of additional jail time, so he

was therefore precluded from claiming the district court erred. *Id.* at 1157 (emphasis added).

In his response to the government's motion for summary vacatur, Charles insisted that *Love* holds that a criminal defendant may waive the statutory maximum term of supervised release. But as Charles acknowledged, this Court disposed of *Love* under the invited-error doctrine and never reached the merits of whether Love's sentence did exceed the statutory maximum (and if so, whether he could agree to an above-maximum sentence). Charles essentially argued that because this Court applied the invited-error doctrine, that somehow amounted to an endorsement that Love's sentence was lawful. But applying the invited-error doctrine is not tantamount to endorsing the district court's arguable legal error. Instead, the invited-error doctrine allows this Court to sidestep the merits of a case, which is exactly what this Court did in *Love*. Thus, *Love* says nothing about whether a court may, over the government's objection but with the defendant's agreement, impose a sentence above the statutory maximum.

Charles also cited to *United States v. Carpenter*, 803 F.3d 1224 (11th Cir. 2015)—another invited-error case—in support of his argument that defendants can waive an illegal sentence that exceeds the statutory maximum. But in that case, the district court never imposed a sentence that exceeded the statutory

18

maximum. *Id.* at 1229-30. Rather, the district court imposed a life term of supervised release, the statutory maximum. *Id.* at 1232. The defendant never argued that his sentence exceeded the statutory maximum but argued that the life term of supervised release he expressly requested was unreasonable. *Id.* at 1228, 1236. *Carpenter* is therefore not on point.

### B. The Only Appropriate Remedy In This Case Is Vacatur Of Both Charles's Imprisonment And Supervised Release Sentences And A De Novo Resentencing.

The next question is how to remedy that error. The right remedy is to vacate both Charles's prison sentence and his supervised release term, since the district court tried to satisfy the goals of sentencing by extending the latter in exchange for reducing the former. "A criminal sentence is a package of sanctions that the district court utilizes to effectuate its sentencing intent." *Pepper v. United States*, 562 U.S. 476, 507 (2011) (quoting *United States v. Stinson*, 97 F.3d 466, 469 (11th Cir. 1996)). That package includes several components: term of imprisonment, fine, restitution, special assessment, and supervised release. *United States v. Mobley*, 833 F.3d 797, 801 (7th Cir. 2016). "Because a district court's original sentencing intent may be undermined by altering one portion of the calculus, an appellate court when reversing one part of a defendant's sentence may vacate the entire sentence so that, on remand, the trial court can

19

reconfigure the sentencing plan to satisfy the sentencing factors in 18 U.S.C. § 3553(a)." *Pepper*, 562 U.S. at 507 (cleaned up).

Under the sentencing-package doctrine, sentences are presumed to form part of a single interdependent package. *See United States v. Fowler*, 749 F.3d 1010, 1017 (11th Cir. 2014). This Court has "routinely, without hesitation and as a matter of course, vacated entire sentences and remanded for resentencing on all surviving counts after vacating a conviction or sentence on some, but not all, of the counts." *Id.* at 1016. This "common judicial practice" flows from "how sentencing decisions are made in cases involving multiple counts of conviction." *Id.* at 1015. So when part of a sentence "is vacated for good, the district court should be free to reconstruct the sentencing package . . . to ensure that the overall sentence remains consistent with . . . the court's view concerning the proper sentence in light of all the circumstances." *Id.*

The Seventh Circuit has held that the "reasoning [of the sentencing package doctrine] applies to remands based on the conditions of supervised release just as much as it applies to sentences that are vacated because one count is reversed, or there is a problem with a Guidelines computation." *Mobley*, 833 F.3d at 801. According to the Seventh Circuit, "complete resentencing is appropriate because custodial and supervised release portions of a sentence serve

somewhat overlapping purposes, and thus there might properly be an interplay between prison time and the term and conditions of supervised release." *Id.* (quoting *United States v. Kappes*, 782 F.3d 828, 866-67 (7th Cir. 2015) (cleaned up)).

To be clear, the government does not advocate for the application of the sentencing package doctrine in every case. But this practice is particularly appropriate here because the district court expressly tethered its downward variance to a 45-year prison sentence to Charles's acceptance of the longer supervised-release term. The court even spelled this out both at the sentencing hearing and in a footnote in the judgment. DE55:36 ("[B]ased on . . . the defendant's stipulation to this 15 years [of supervision], I have reduced his sentence down from life to 45 years."); DE66:4 n.1 ("[T]he defendant stipulated to this increased term of supervised release in lieu of additional time in prison."). Put another way, the sentencing judge cut Charles a break on his term of imprisonment because the judge believed that an extended supervised release term above the statutory maximum would be enough to curtail Charles's violent tendencies and compensate for his decision to reduce Charles's term of imprisonment from life to 45 years.

21

But, as the district court recognized, it was statutorily prohibited from imposing a total supervised-release term of longer than five years. DE66:4 n.1 ("The Court acknowledges that fifteen (15) years of supervised release exceeds the statutory limit."). And the district court's comments suggest that, without the supervised-release term, the court would have entertained a longer prison sentence. So if this Court vacates Charles's 15-year supervised-release term on appeal, and the district court reduces Charles's supervised release term to the statutory maximum of 5 years on remand—as required by law—there is a reasonable possibility that the district court would restructure the sentencing package by increasing Charles's total prison sentence to reach the appropriate total punishment for his horrific and violent offenses. *See United States v. Wylie*, 991 F.3d 861, 865 (7th Cir. 2021) ("[C]ourts may increase the punitive weight of one component of the sentence in response to being more lenient with another.").

As the district judge emphasized, "this is probably as violent or as vicious a series of criminal acts I've had before me in my 20-something years on the bench." DE55:18. Among other things, Charles targeted multiple gay men for kidnappings and carjackings, and he assaulted them, earning three hate crime enhancements. *See* PSI ¶¶ 40, 46, 52. One victim said that Charles called him a

22

"f----t" and vowed to "kill all of you" and "kill everyone like you." PSI ¶ 10. And Charles tried to execute another victim—three shots to the head and two shots to the shoulder. PSI ¶ 23.; DE55:6-7. All this occurred while Charles was on probation for a different string of violent armed robberies. *See* PSI ¶¶ 76-79. In his three years as an adult, Charles has committed half a dozen violent crimes. If anything, his conduct is escalating fast, going from punching and choking in May 2020, PSI ¶¶ 76-78, to shooting a person execution-style and leaving them for dead two years later. The district court even remarked that it was "concern[ed]" that Charles "show[ed] no remorse," for what was "the most vicious, violent series of crimes within ten days . . . and this sounds like this is something he is destined to do for some reason." DE55:20. Given these comments, the district judge should have the chance to craft a total sentence package that fits the facts of this horrific case.

Based on the parties' briefing in the motion-for-summary-vacatur context, the government understands that Charles has two arguments against applying the sentencing package doctrine here. But neither one is persuasive.

First, Charles suggests that the sentencing package doctrine applies only to "sentences involving more than one count of conviction." ADE29:24. But he mistakes the doctrine's most typical application for the doctrine's logical reach.

23

As articulated in *Pepper*, the reason for vacating an entire package when one component is erroneous is that the error could have affected the district court's consideration of the other sentencing components. *See* 562 U.S. at 507. In the typical case, a vacated conviction in a multi-count case may meaningfully affect the severity that the sentencing court would attach to the remaining counts. An appellate court faced with that uncertainty vacates the whole package to ensure that the district court has the opportunity, if it wants to do so, to "reconstruct the sentencing package . . . to ensure that the overall sentence remains consistent with . . . the court's view concerning the proper sentence in light of all the circumstances." *Fowler*, 749 F.3d at 1015.

If anything, this scenario, while more unusual, is a stronger candidate for applying the sentencing package doctrine. In the ordinary case, the appellate court vacates a sentencing package based on the mere possibility that the different counts interacted with and affected each other. Here, in contrast, the district court explicitly stated that the illegal supervised release term was the lynchpin of the bundle: that it was sentencing Charles to a lower prison term solely because of "the defendant's stipulation to this 15 years [of supervision]." DE55:36. This statement demands no guesswork. Of course, the error infected both components of the sentence—because the district court told us so.

24

Second, Charles believes that the government failed to preserve any request for applying the sentencing package doctrine by complaining only about the supervised release issue. ADE29:13. As a legal matter, that is wrong. The sentencing package doctrine addresses the appropriate remedy for an illegal sentence, and a party need not preview the appropriate appellate remedy when objecting to an erroneous ruling. It only needs to highlight that error to preserve its claim on appeal. And in any event, the record shows that the government did object to both components of this illegal package.

At sentencing, the government explained that it objected to Charles's illegal supervised release term because of how it affected the term of imprisonment:

> Your Honor said you reduced the sentence of imprisonment based on the fact that you were giving a longer term of supervised release. So assuming a court later finds that a five-year maximum is all that he can serve, that would concern the Government that Your Honor was basing your sentence based on the maximum of supervised release—term of supervised release being longer.

DE55:38-39. Indeed, the government raised the logic behind the sentencing package doctrine, explaining that it was "concern[ed]" that Charles's reduced imprisonment sentence was "based on the term of supervised release being longer," and it anticipated this Court "later find[ing] that a five-year maximum

25

is all that [Charles] can serve." DE55:38-39. That statement put the court and Charles on notice that the government objected to this error and to its effect on both Charles's prison term and his supervised release term. Thus, the government preserved this argument.

## Conclusion

For these reasons, this Court should vacate Charles's sentence—including both his prison term and his illegally long supervised release term—and remand for a de novo resentencing.

Respectfully submitted,

Markenzy Lapointe
United States Attorney


By:    s/ *Shahrzad Daneshvar*
Shahrzad Daneshvar
Assistant United States Attorney
99 N.E. 4th Street, #500
Miami, FL 33132
(305) 961-9155
Shahrzad.Daneshvar@usdoj.gov

Daniel Matzkin
Chief, Appellate Division

Jason Wu
Deputy Chief, Appellate Division

Of Counsel

## Certificate of Compliance

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements for Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word 2016, 14-point Calisto MT font.

## Certificate of Service

I hereby certify that four copies of the foregoing Brief for the United States were mailed to the Court of Appeals via Federal Express this 8th day of February 2024, and that, on the same day, the foregoing brief was filed using CM/ECF and served via CM/ECF on Daniel L. Ecarius and Michael Caruso, Federal Public Defender, Attorney for Appellant.

s/ *Shahrzad Daneshvar*
Shahrzad Daneshvar
Assistant United States Attorney

*ags*